No. 1069.

Désiré Thibodeaux vs. Cleophas Broussard.

| 32 | 881 |
| 52 | 7 |
| 52 | 8 |
| 52 | 9 |

No entry and settlement, under the United States Homestead Act of the 20th of May 1862, can be made of swamp lands previously donated to the State of Louisiana by the United States, when the lands have been examined, surveyed and listed and the Report of the Surveyors approved by the Secretary of the Interior, according to the laws of Congress.

APPEAL from the Twenty-Fifth Judicial District Court, parish of Vermilion. *Mouton, J.*

Jos. A. Breaux for Plaintiff and Appellee :

1—A patent was issued by the State.

2—The selection of the land patented was approved by the officers of the Public Land Department, including the Secretary of the Interior.

3—The selection is proven by copies of lists duly certified and admitted without objection.

4—A larger area of swamp land was selected in the township than a

Thibodeaux vs. Broussard,

township contains ; therefore, plaintiff's land in the township must be included in the selection.

5—Selections are made by reference to field notes.

6—The State is entitled to all lands, whenever more than half in each legal subdivision is swamp land, wet and unfit for cultivation.

7—No homestead entries can be made of these lands, especially when they have been listed, selected, and it is proven, in addition, that they are of the above-mentioned character.

W. W. Edwards for Defendant and Appellant.

The opinion of the Court was delivered by

Todd, J. This is a petitory action. The plaintiff claims title to the land described in his petition by virtue of a sale to him from Edgar Comeau on the 16th July, 1870, who, he alleges, acquired the same from the State, and to whom a patent issued on the 5th of May, 1858, under the provisions of the act of Congress approved March 2, 1849, known as the Swamp Land Act.

The defendant denies the title of plaintiff, and asserts his inchoate title to the land, based upon an entry and settlement under the United States Homestead Act, approved May 20, 1862.

The question presented for our determination is whether the land in controversy was legally embraced in the swamp lands donated to the State by the act first named, or, as United States Government land, was subject to entry and settlement under the homestead act mentioned.

The act of Congress donating the lands to the State referred to provides :

Sec. 1. " That to aid the State of Louisiana in constructing the necessary levees and drains to reclaim the swamp and overflowed land therein, the whole of those swamp and overflowed lands which may be found useful for cultivation shall be and the same are hereby granted to the State.

Sec. 2. " That as soon as the Secretary of the Treasury shall be advised by the Governor of Louisiana that that State has made the necessary preparation to defray the expenses thereof, he shall cause a personal examination to be made under the direction of the Surveyor General thereof, by experienced and faithful deputies, of all the swamp lands which are subject to overflow and unfit for cultivation ; and a list of the same to be made out and certified by the deputies and Surveyor General to the Secretary of the Treasury, who shall approve the same so far as they are not claimed or held by individuals ; and on that approval the fee simple to said lands shall vest in the State of Louisiana, subject to the disposal of the Legislature thereof."

Under the provisions of the second section of this act, an examination of said lands was made by surveyors, and lists of the lands selected as swamp lands were made out, certified to, as required by the act, and forwarded to the Secretary of the Interior for his approval, and were duly approved. And in 1857 the lands thus selected and approved to the State were confirmed by act of Congress.

We find in the record that among the lands thus selected, approved, and confirmed, were lands in township 14 S. R. 4 E, being the township in which the land in controversy is situated. The plaintiff insists that all the lands in that township were embraced in that selection and report, including, of course, the land in question. This is denied by the defendant. The dispute grows out of the character of the report made respecting these lands, and the mode or manner in which the lands purport to have been selected. We find in the record a report signed by John Boyd, as deputy surveyor and agent of Louisiana for selecting swamp land, and made to the Surveyor General of Louisiana, and approved by him, in which certain sections in said township are designated and a list given of the same as selected, and a statement then follows in the report that the balance of the township has been selected. We think this makes it plain enough that the balance of the township besides the subdivisions designated, were selected as swamp lands, which would of course return the entire township as swamp. But the counsel for the defendant argues from the words "all the unsurveyed portion as described as sea marsh in the township," makes the true meaning of the report to be, that the balance of the lands referred to as returned to the State, was the unsurveyed sea marsh, and did not include any surveyed lands, except those specially designated.

We find, however, by adding together what is termed in the report as sea marsh, estimated at 18,622 acres, and the sections expressly listed by their numbers, and deducting the 16th section reserved, would give the State 24,000 acres in that township—more acres even than a township contains.

It seems from this that the authorities of the State might very properly conclude, under the reports and approvals relating to this particular township, that all the lands therein belonged to the State.

Such was the conclusion, and the State acted on it, and proceeded to sell the lands in question, including the land sued for; and the State ownership of this land seems never to have been questioned, until nearly twenty years after the patent issued to the plaintiff, when we find an entry of the land under the Homestead Act being allowed to the defendant, which would imply that a claim to these lands was being again asserted by the officers of the General Government having authority over the government lands within the State. There is no doubt that the dif-

ferent reports of the surveyors and other documents filed in the record respecting these lands might have been more precise and definite in their terms, and established the right of the State to these lands so clearly as to put it beyond controversy. But we find the plaintiff in possession of a title to this land derived from one who held a patent issued by the State, based upon a selection approved and confirmed by the United States, affording to the State authorities what was officially deemed indubitable evidence of the right of the State to the land. We must presume that these State officers did their duty, and giving to the evidence offered by defendant, afforded by the irregularities cited in the reports touching these lands, its full weight, it is not sufficient to cast a reasonable doubt on the title shown by the plaintiff to the land.

The plaintiff has asked an amendment to the judgment by allowing him the damages claimed in his petition. We do not think the evidence supports the claim in this respect, and we cannot allow it.

It is therefore ordered that the judgment appealed from be affirmed with costs.